Mr. Evans. Good morning, your honor. May it proceed. For all of you, this lectern here rises. You can raise it, lower it, adjust it however it fits you best. May it proceed. Thank you, your honor. May it please the court. Today we're here on a simple contract action. Despite the Union Pacific's attempt in its hometown to argue that there is something about public policy that is at stake, that a contribution protection that it received through some undisclosed dealings with the Environmental Protection Agency should ban and bar forever a claim that was committed to writing between the parties that the contribution action, a defined term in the contract, would be deferred to alternative dispute resolution and litigated there rather than openly. Let's assume you take it to arbitration, alternative dispute, mediation, whatever. What can they decide? Well, under the Union Pacific, and unfortunately the lower courts read it. Well, but I'm talking about, you know, under 4296.13.F2, what can the ADR decide? Do you think they can do something contrary to the statute? Well, your honor, you bring up really what is the threshold question, which is whether the parties can by contract agree to waive the contribution protection, which is in that statute. And the answer to the question is yes, they may do that. And there's nothing in the case law that says that they cannot. The contribution protection that the Union Pacific obtained from the EPA exists. They obtained it. And contrary to the lower court's determination that somehow the protections that they received would be eviscerated is just incorrect. They have contribution protection, and we're not contesting that they do not. What we are arguing is that there was a contract that preexisted that contribution protection issued by the EPA, which preexisted and which was preserved by the agreement between the parties, which defines contribution claims. Which expressly states over and over again, that is the intent of the parties, the wish of the parties, to defer this, to hold it without altering it, and then to defer it to ADR. That's what the course of performance- Well, here, do you say that the UP altered it because they got the protection and they settled with the government and they got the protection of the act? As to ASARCA, they altered it because they claimed that they were protected when in the contract they promised that they would submit the contribution claim as it existed, unaltered, to either ADR or if necessary, to litigation. Now, I recognize that this is not the most artfully drafted agreement. We realize that, but what happened below, what happened in the district court, was a failure by the district court to engage in the kind of, frankly, analysis and to probe the four corners of the agreement such that in a motion to dismiss setting, it could be determined that there was a question of fact, at least. I think that the contract is clear, but at minimum, the contract is vague in some terms. So you accept that the lion oil standard applies? Yes, we do. And we think that the pleading is sufficient. And I know there will probably be a question, I might as well address it now, as to whether or not we should have asked to amend the pleading. We don't think that under the pleading standard that applies, that there should have been a request made. And we would not ask for an opportunity to amend the pleading. The pleading expressly says that there was an agreement and that there was a breach of that agreement. How that agreement was breached was by the Union Pacific's failure to abide by its term to submit the contribution claim to ADR, and that didn't work to allow for litigation. Is there anything in the agreement that indicated the parties were contemplating the possibility of a settlement? Yes, that was the purpose behind it. As this honorable court knows, the law favors settlement. And the law favors a contract that seeks to resolve a dispute rather than one that seeks to perpetuate it. And if we consider what we were doing in this situation, is that Union Pacific was fighting with the government, the EPA, over some facts that had come out that lead-based paint was polluting the Omaha lead site. And the SARCO was fighting that too. So to keep in mind the context for this, a SARCO, a party that paid $300 million to clean up the Omaha lead site, including the old site that is now the Lewis and Clark Landing, and the Union Pacific got together and said, we are going to defer the contribution claims between us until later. We're going to defer that until later so that we can team up and figure out just what the government did wrong with respect to this lead-based paint issue in the Omaha lead site. And that's what the agreement did. And that's why the agreement said... So what language do you cite in the Tolan agreement for proof of waiver? Yes, Your Honor. Now, I'm not going to be able to cite to you explicit language like that which the lower court found as the basis for denying this on a motion to dismiss was necessary. Because that's not the standard. That's not the standard. But to answer the court's question... But the standard for waiver is pretty strict. You have to show that they knew and then expressly waive something, whether it's oral or written. Let me answer both, I think, questions by doing this. Of course the parties knew that a contribution claim existed. It's stated in the recitals of the agreement. The contribution claim itself is defined. It says that ASARCO asserts that Union Pacific is a potentially responsible party under CERCLA. And as to the language that the court has asked to verify that there was that intention to waive that contribution protection, that is to submit the contribution claims to ADR, here's some of the language. The wishes of the parties to defer resolution of the contribution claims until after the conclusion of the FOIA litigation. Contribution claims are both capitalized. C, capital C. The defined term. But does it... I mean, what they did doesn't affect the core point. I mean, you can still go... That's my first question. You can still go through ADR. But they now have a defense. Is there any language... I think what Judge Smith is asking, is there any language to say they're going to waive this defense? The only defense they're waiving that I see is a statute of limitations. You know, respectfully, we are so focused on what is not in the contract. I think the lower court was so focused on what is not in the contract, it failed to focus on what is in the contract. And there is language in the contract in a number of places expressing an intent by the parties to submit the contribution claims intact for dispute. Well, I'm agreeing with you on that. I'm saying, yes, you submit it intact. But what has occurred is they now have a defense. Now, is that something... I mean, are you arguing that the district court was wrong because you've got to go through the procedures and let the ADR, let's say an arbitrator, decide whether that defense applies or not? Well, then that would really make mockery of what was the party's intent. Why would we go through ADR if the contribution protection that we sought to preserve could be asserted in the ADR process? It would make the contract illusory. It would make the contract a nullity. And it certainly is not consistent with all of the language that I was beginning to quote from the contract that expresses the intent of the parties to preserve the contribution claims. So to, I think, address hopefully more precisely your point, we would never have entered a contract. The company would never have entered a contract knowing that Union Pacific could go out and settle the case with the government and get contribution protection while it was bound, while it was gagged. Let's think about it. The contract required certain performance by a SARCO, which it made. Did it waive its 9613F2? A SARCO did not have a contribution. No, it did not. A SARCO had contribution protection from the government because it settled this case by paying over $200 million to the residents of the Omaha-led site. And Union Pacific did not. Union Pacific was not a settling site. Okay, I understand that. You're running out of time. Let me ask you one more question. When you got the public notice of the UP and the EPA settlement, what does the record show about a SARCO? I know a SARCO didn't object and didn't move to intervene, but is there any explanation in this record why a SARCO didn't take some action? Yes, Your Honor. There is an explanation, and it is because a SARCO agreed not to. If a SARCO had initiated action, that action would have been a complaint in intervention against the Union Pacific. And a SARCO abided by the terms of this contract, which said that it couldn't litigate. It couldn't litigate contribution claims. And that is a consistent and loud, I think, confirmation of how the parties have performed consistent with the terms of the agreement as we are presenting them in this appeal. And unfortunately, it's at odds with the way that the lower court interpreted the agreement. A SARCO told the statute. A SARCO stood down. A SARCO didn't litigate. A SARCO didn't intervene. A SARCO provided the documents that were sought by Union Pacific that it received from its FOIA action. A SARCO cooperated. And when it came time to do what the contract said, which was to submit this for adjudication or ADR, submit what? The contribution claims, the fine and the agreement. Union Pacific had been double dealing and came to it and said, oh, sorry, the terms of the contract are a little unclear. Mr. Evans? Yes, sir. I think I pretty much agree with you. There's some pretty good waiver language in the contract. But you skipped right over at the beginning the issue of precedent or analysis of the federal statute as to whether that's a waivable thing. And you said, oh, yes, it's clear. I have had some difficulty in finding any precedent that permits waiver of that statutory protection by a party. Can you direct me to that? I can, Your Honor. And what I would prefer to do, there is a long cite for that in our reply brief. I'd be happy to do that on rebuttal. Well, I've read your reply brief. Well, OK. And to point you to that authority, but I would state to this honorable court that there is authority for parties to privately contract around the contribution protection otherwise available to a settling party under surplus. They are a settling party. They entered a contract. They agreed to defer the contribution dispute between ASARCO and Union Pacific to ADR and, if necessary, to litigation. In exchange, ASARCO had to stand down. It did. It didn't challenge the agreement that it obtained, and that's because it was contractually bound not to. I'll reserve the remainder of my time if I have any left. OK. Thank you. Morning, Ms. McIntyre.  May it please the court. When Union Pacific entered into a settlement with the United States and that settlement was approved by Judge Smithcamp, resolving Union Pacific's liability associated with the Omaha-led site, it automatically obtained contribution protection by operation of 42 U.S.C. 9613 F2, which I'm going to refer to as the CERCLA contribution protection provision. Unless you contractually waived that statutory protection. Yes, Your Honor. And it's hard for me to read all of that stuff. I mean, you say, oh, there's no waiver here, but there's a lot of fluff in the contract if there isn't some waiver of some sort along the way. The tolling agreement does waive the statute of limitations, and expressly... I'm talking about the waiver of your statutory protection, which you're leaning on in this lawsuit. And, Your Honor, it does not waive. Union Pacific never waived its right to contribution protection. In fact, in paragraph 10 of the tolling agreement... Why would you care about the statute of limitation? What issue would be out there that was subject to a statute of limitation? All this... I'm sorry, Your Honor. Union Pacific did not waive its contribution protection is what I meant to say. It did not waive any of its rights and defenses. In paragraph 10 of the tolling agreement at appendix... ASARCO's appendix 28, the tolling agreement actually says, the parties reserve all rights and defenses which they may have, except as set forth in this agreement, to contest or defend any claim or action the other party may assert or initiate against them. Moreover, in the recitals... What were you dealing with in this contract, if it wasn't a contribution from your joint venture here in this 1871 business that was dropping lead around Omaha, according to the allegations? What was the purpose? What claim were you talking about in here that you... if it wasn't... if contribution from you wasn't one of the claims that might come up? At the time that the tolling agreement was entered into, Union Pacific had initiated a Freedom of Information Act action against EPA because there were indications that EPA had been destroying documents that reflected lead-based paint was, if not the issue, a primary contributor to lead within the Omaha lead site. And that was... Well, if they were destroying documents about this that affected ASARCO, that was ASARCO's claim. They didn't need your permission or anything, did they, for them to bring... In fact, as they thought about joining you, I guess, and decided not to, as I... Actually, it was an objective of the tolling agreement for them. It was one of their objectives in the recitals at ASARCO Appendix 26 that ASARCO wishes to intervene in and participate in the FOIA litigation. And the reason for that was that by virtue of Union Pacific's requests under the Freedom of Information Act, it was obtaining substantially greater documentation from EPA than that ASARCO had not asked for and did not have available to it without going through the same procedures. So it wanted to intervene in Union Pacific's FOIA action. So that was litigation that was then pending. In order to enter into this tolling agreement or in the process of doing that, ASARCO specifically stated that it... And, again, I'm referring to ASARCO Appendix page 26, recital number 4 of the tolling agreement, that said Union Pacific disputes any allegations that it's a PRP at the Omaha-led site, meaning a potentially responsible party, and disputes ASARCO's contentions that Union Pacific is liable for any portion of ASARCO's settlement, based in part on the evidence that EPA pursued an improper and illegal cleanup at the Omaha-led site. So from the outset of the tolling agreement, Union Pacific disputed that it was liable, and it also reserved all claims and defenses associated with any dispute vis-à-vis ASARCO concerning ASARCO's contribution claims. And as this court has recognized in United States v. BP, where that was a case involving the Des Moines TCE site, where DICO had contribution rights that it wanted to assert against BP, Shell, Monsanto, and others. And this court held that DICO's... And DICO actually had a pending contribution suit when the United States sought to settle with and entered into a consent decree of the type that Union Pacific obtained here. And this court held that DICO's contribution rights, such as they were, were a creature of the surplus statute, they were created by the statute, and they were never vested because they were always subject to being extinguished by the contribution protection provision that we are relying on. So that was always the case, even in the context of the tolling agreement. And the tolling agreement does not preclude Union Pacific from settling with the United States. It makes no mention of settlement with the United States. It certainly doesn't prevent that. It doesn't prevent Union Pacific from asserting contribution protection. It doesn't explicitly waive anything with respect to contribution protection. There is no reference to CERCLA 113F2. In the tolling agreement, it simply was not precluded. It was not a term that ESARCO bargained for. There were two waivers that are explicit and do meet the lion oil test that are contained within the tolling agreement. Those two are at ESARCO's appendix, page 27, paragraph 7, that the parties agree that as between themselves, the statute of limitations contained in 42 U.S.C. 9613G is jurisdictional, but the parties agree that the statute of limitations is a waivable defense as between the parties. That's an explicit waiver going to the statute of limitations, which was the issue that ESARCO bargained for. The other explicit waiver is that ESARCO waived, in paragraph 12 of the tolling agreement, waived any conflict of interest related to Union Pacific's use of experts in subsequent litigation that they shared in the FOIA litigation. Those are the only two waivers. There is no waiver by Union Pacific of its contribution protection. That is simply not addressed. And in the complaint, turning to whether the allegations are sufficient to meet the standard and avoid the motion to dismiss, ESARCO can... What about paragraph 13? What was the purpose of this? ESARCO's intervention in the FOIA litigation and the subjective matter litigated in that case shall not be asserted by either party to constitute a waiver of any claim or position related to the contribution claims that either party may have against the other party. What is that talking about? Given the positions or issues that may arise in the FOIA litigation, neither party wanted to waive any position, claim, or defense that they might take should there be later litigation about their contribution between each other. Counsel, what rights did Union Pacific consider it was enabling the other side to preserve by entering a tolling agreement? What did you anticipate they might litigate against you? Certainly it was possible that there would be disputes arising from their participation in the FOIA litigation. But the FOIA litigation, the joint objective, and ESARCO does allege this in its complaint, the joint objective was to obtain exculpatory documents from EPA that showed that lead-based paint was the source of contamination in Omaha. And if that were the case, then neither party, neither ESARCO nor Union Pacific, would be liable to EPA for remediation costs or their liability would be reduced. And ESARCO does acknowledge in allegations in the complaint that EPA, that we obtained many, many documents from EPA that were exculpatory and the objective that ESARCO had was that ESARCO would seek to reopen its settlement in bankruptcy to reduce its liability in that form. Its objection was that it alleged that it had paid too much to the United States. Well, a very direct way of resolving that was to get exculpatory documents and reopen that settlement and reduce it. That was the advantage that ESARCO received. So you're saying what they were reserving the ability to do against you was to sue you to obtain documentation? No, Your Honor. What they were doing, the reason they participated in the FOIA litigation was in order to obtain exculpatory documents. The claims and defenses that it sought to preserve against Union Pacific presumably would be whatever contribution rights remained. Just go to the tolling agreement. What was it you were getting UP to waive? What did Union Pacific waive? Yeah, what were you giving up? Union Pacific waived the statute of limitations. The parties did not, the statute of limitations, as that paragraph states, paragraph 7 of the tolling agreement, the parties agreed to refrain from asserting the statute of limitations. Statute of limitations for what action? For a contribution claim. That's where I was trying to get to. And agreed to preserve that, extend that, or not assert that as a defense. But no other waivers were given. Counsel, what's this language? Whereas in the interest of judicial economy and to conserve Union Pacific and the SARCO's resources, the parties have agreed to toll any applicable statute of limitations on the contribution claims until two years after the conclusion of the FOIA litigation. And that's in the contract, too. That's part of paragraph 10, as I understand it. What does that language mean? If you continue reading that paragraph, it also says... Without any admission of liability and the parties in any way altering the claims, defenses, or counterclaims available to any party here to accept as provided herein. That's the rest of the paragraph. So reading that paragraph in the context of the contract as a whole, what it means is that the statute of limitations could be extended, that it would not be asserted as a defense. On the contribution? On the contribution claims, should those issues ever be litigated. Who would the contribution claims be among? Would it be contribution one way or the other between you and a SARCO, right? Yes, Your Honor. And Union Pacific, having already expended funds associated with the Omaha-led site, had its own contribution claims that it might litigate. It had not settled at the time with the United States, but it was conceivable that the issues could be completely resolved by a SARCO resolving its overpayment concern with the United States directly by reopening that claim, or it's conceivable that the parties could have resolved their issues amongst themselves in the context of negotiation or the FOIA litigation itself. A SARCO had other parties it could pursue if it chose to, and Union Pacific preserved its ability to assert its own contribution claims or raise any other defenses that it might have, including contribution protection. And the tolling agreement simply does not preclude it from pursuing settlement with the United States. And in fact, it's one of the purposes of CERCLA in examining the statutory structure that it's recognized the United States has a superior right to any party that may have a contribution interest in order that the United States can obtain or collect money to further cleanup. And that's precisely what ended up happening. So that puts in question whether under the statute you can waive your right to contribution protection. Is that right? Is that what you're arguing or what? Well, that issue has not specifically... Mr. Evans says it's been decided and it's clear. All I need to do is read his reply brief. Do you think differently on that subject? Yes, Your Honor. We did not find any cases that directly addressed the issue of whether contribution protection can be waived, and it would be very unusual to have a party who negotiated and settled with the United States to waive and give up their statutory protection right. But more importantly, the operation of 113F2 is automatic and says that by settling liability, the party obtains by operation of statute contribution protection for all matters addressed within the consent decree. And in our case, the consent decree was very broad. At ASARCO Appendix 129, Paragraph 81, the matters addressed include all response actions taken or to be taken and all response costs incurred or to be incurred and natural resource damages at or in connection with the site by the United States or any other person. So by operation of 113F2, automatically that protection extended to all matters addressed. And by operation of 113F3B, that provision precludes contribution actions against any party that has settled. So to directly respond to your question, we are not aware of any case actually addressing waiver of contribution protection. Those two provisions, 113F2 in combination with 113F3B, may operate to preclude suit against a settlor and to automatically afford the contribution protection. So by operation of statute, this court has recognized in United States v. Union Electric and in Morrison Enterprises v. Draveau that the CERCLA contribution is limited. The contours of that right are specifically delineated in 113. And so what I'm saying is that those two provisions, 113F2 and 113F3B, may operate together to preclude waiver by statute. However, that issue need not be decided by the court in order to affirm the holding below because the tolling agreement is clear on its face that there was no waiver. But if we think the statute, if we think the contract does provide a waiver, then we have to address that issue, right? Well, not necessarily because I think that there was nonetheless no breach and there's no sufficient allegation, series of allegations, within the complaint to sustain. Your time's expired. I have one question. Are you saying that the policy under CERCLA for this defense is to encourage settlements, to encourage companies or persons to settle with the government and they give them this defense, and that if we didn't allow the defense that that somehow weakens CERCLA? Yes, Your Honor, it would. It would not only undermine the purposes of CERCLA. I'm hearing that from your argument, but the question is how does it weaken or detract from CERCLA? Because by virtue of entering into a tolling agreement, which is very conventional in litigation management and avoiding waste of judicial resources, the parties looking at this case would say, well, not only do we not have assurance associated with a tolling agreement, but we don't have finality associated with entering into a consent decree settlement with the United States, even though it says that we're completely protected by virtue of the contribution protection provision. Okay, your time's expired. I think the answer is then don't sign waivers ahead of time, probably. It's Art Sarko's answer to that. Okay, your time's expired. Thank you, Your Honor. How much time does Mr. Evans have? Mr. Evans has six and a half minutes. Okay. You may proceed. Thank you. First, to address the court's question about authority for the proposition that private parties may contract around contribution protection that is otherwise available to them through a settlement with the government under CERCLA. The answer is yes. Union Pacific's advocate, my colleague, respected colleague, was not able to provide any authority to this court, has not been able to provide any authority to this court for that proposition. On page three of our response briefs, there is a series of citations that provide just the authority that I believe the court is looking for. And quickly, I will summarize. In Fisher Development Company versus Boise Cascade, in Central and Illinois Public Service Company versus Industrial Oil. And in that case, it's important to note that 42 U.S.C. 9607A permits a settling party to retain continuing liability pursuant to a written agreement. Who's saying that? This is the Western District of Montana, United States District Court. The Western District of Montana. Yes, Your Honor. Okay. And so those citations are at page three. And the Western District of Montana's president would be, of course, binding on this court? No, Your Honor. It is simply illustrative of the rule that I think exists, and it makes a lot of sense if you consider the language of the statute, because the statute itself says, and I'll quote, nothing in this subsection, referring to 9607E, shall bar any agreement to ensure, hold harmless, or indemnify a party to such agreement for any liability under this section of CERCLA. So obviously, sophisticated companies go out there and they divvy up liability, and they go out and they cut the best deal they can with the United States to clean up human health and the environment, and they do that, and then they privately contract to allocate that at a later time. And that is exactly the situation that we have here, and that's exactly what we contemplated when we entered the agreement with the Union Pacific. So I'll finish by saying here. Well, let me ask you a question. Ms. McIntosh raised a section I'm not familiar with, 113F3B, in answer to I think it was Judge Beam's question about whether you could waive this and precludes contribution. Are you familiar with that section? I am familiar with section 113. Can you respond to that? Yes, Your Honor. Section 113 is the basis for the claim that is before the court. It's one of the causes of action. It's a contribution claim. It's a claim under CERCLA where one party pays the United States, receives contribution protection, and then pursues other non-settling parties, and that's exactly the situation we had. The difference here is that Union Pacific went ahead and settled with the government, got contribution protection, and now is asserting that protection despite the agreement between the parties seeking to preserve it. All of this is a way of saying, Your Honor, these are factual questions that should not have been resolved at the lower court in a motion to dismiss. Lumping all of the causes of action together, calling them disguised contribution claims under 113 or otherwise, the common law, was, I think, an error. Each cause of action should have been considered. If we look, for example, at the breach of good faith, you know, that's a separate factual analysis, and we provide case law on that point. That's a separate analysis that should have been performed if the court was going to be the trier of fact, but in a 12B setting, the court's not acting as a trier of fact. The court should be applying a standard pleading, determining whether this is something that should have its day in court, and the court did much more than that below. It lumped it all together, didn't look at each cause of action separately, and dismissed the case summarily without giving us our goods day in court. And if I could finish by saying the court asked several questions of Union Pacific regarding what would be litigated if not a contribution claim, and we've got no answer. Asks what would be given up by Union Pacific, and we really didn't receive a satisfactory answer. At the end of the day, you had two companies, one of which paid about $300 million to clean up the community and settle this case. Union Pacific started that smelter. Union Pacific poured its slag into that smelter. This is all in the record below. Union Pacific ran and owned that smelter before ASARCO did. It gets back to my first question, which I guess is the third time I've kind of asked it. What is it? Following your logic is, well, you still have a contribution claim, and you go through ADR. Is it at that point you say factually that 113F can be applied? The defense? Or are you saying somehow that defense is gone forever? The defense has been waived, Your Honor. That's the answer to the question, and that once the ADR process runs its course, ask between ASARCO and Union Pacific only, unless they have an agreement with some other party, which I'm not aware of, but we know that we have an agreement with them. Let me then go back to Judge Smith's question. What language explicitly waives it? There is no explicit language in the agreement that waives it by calling out the statute and calling out the section. However, contribution claims are defined, CERCLA is mentioned, and language is found throughout the contract. How do you explain Ms. McIntosh is arguing the language? I think it's paragraph 10 that says that the parties reserve all rights and defenses  I think that's the language. Why does that not say right here that the UP has reserved the CERCLA defense? Again, a question of fact, a question of intent, but playing that out, we would argue once we have, hopefully, our opportunity to present the evidence that it was the intent of the parties to preserve all claims and defenses as they existed at the time that the agreement was entered into. So if we had certain defenses as to the years of operation or the materials that were handled by ASARCO versus the use by the railroad of lead-containing ballast throughout the community, those claims and defenses... But you're saying it was waiving defenses that arise later, like the CERCLA defense? Apart from contribution protection, defenses were preserved. So the parties would be free to develop and discover whatever the defenses they had. As we attempt to allocate the responsibility between the parties. But the question of whether the parties would attempt to allocate because contribution protection was not going to be a defense is answered by all of the references in the contract where it says over and over again that it's the intent of the parties, the wishes of the parties, the desire of the parties to avoid prolonged litigation and to submit the contribution claims between the parties to ADR. And if that didn't work, to litigation. I think there's enough, Your Honor, in the four corners of the agreement at least to let this go into a phase of discovery and not have it dismissed, on motion to dismiss... Okay, your time's expired. Yes. You argued that well. Thank you both for your arguments, well presented both in the briefs and the oral arguments today. We thank you, and we'll be back to you as soon as we can. Your Honors, good morning. Thank you. Thank you.